IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JEREMY KNAPP,

    Plaintiff,

v.                          CASE NO.  5:16cv20-RH/GRJ

GULF COUNTY SCHOOL BOARD,

    Defendant.

_____/

ORDER GRANTING SUMMARY JUDGMENT
ON THE RETALIATION CLAIM

This is an employment-discrimination case. The plaintiff asserts two claims: disability discrimination and retaliation for asserting a disability-discrimination claim. This order grants summary judgment on the retaliation claim.

I

The plaintiff Jeremy Knapp was a principal at a school operated by the defendant Gulf County School Board. Mr. Knapp missed a substantial part of the 2013-14 school year for back surgery. The Board assigned Duane McFarland—an assistant superintendent and former principal of the same school—to fill in. At the

end of the year, the Board retained Mr. McFarland in the position and did not renew Mr. Knapp's contract.

Mr. Knapp asserts two claims against the Board: first, that the nonrenewal constituted discrimination based on a disability; and second, that later, in retaliation for the discrimination claim, the Board gave Mr. Knapp negative job references. The Board has moved for summary judgment.

At the conclusion of a hearing on the motion, as announced on the record, I denied summary judgment on the disability-discrimination claim, and I gave each side leave to file a notice of supplemental authority on the retaliation claim. The order of December 19, 2016, confirmed these rulings.

The Board filed a notice of supplemental authority that complied with the order. Mr. Knapp chose to file instead a further memorandum on the motion. I have considered each side's filing, together, of course, with the prior memoranda and the entire record. That Mr. Knapp filed a memorandum rather than a notice of supplemental authority has given him no advantage.

II

The record includes scant evidence that school officials provided negative references to prospective new employers of Mr. Knapp. The Superintendent of Schools, Jim Norton, gave a generally favorable reference to his counterpart in the

adjoining county, Bay County, but added that Mr. Knapp would do a good job there if he got his life together—surely a negative indicator. Mr. Norton gave favorable responses on an Iowa school district's reference form but did not respond to the question whether Mr. Knapp was eligible for rehire—another negative indicator. Mr. Knapp says other districts in other states told him he was not chosen after they checked his references, but this is hearsay that would not support a finding that those employers checked Mr. Knapp's references at all, let alone that they checked with the Gulf County School Board rather than some other prior employer or some other reference. So it comes down to a suggestion that Mr. Knapp needed to get his life together and the omission of information on whether Mr. Knapp was eligible for rehire.

To establish a prima facie case of retaliation, a plaintiff must show that he engaged in protected activity, that he suffered an "adverse employment action," and that the protected activity and adverse action were causally related. *See, e.g.*, *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998). To prevail on such a claim, a plaintiff must show that retaliation was a but-for cause of the adverse action. *See Univ. of Tex. Sw. Med. Cntr. v. Nassar*, 133 S. Ct. 2517 (2013).

For this purpose—that is, for a retaliation claim as distinguished from an original discrimination claim—an "adverse employment action" is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

Mr. Knapp's protected activity was filing the charge that his nonrenewal was discriminatory. The only alleged retaliatory conduct was providing negative job references. The issues are whether any negative reference was an adverse employment action and, if so, whether Mr. Knapp's filing of the charge of discrimination was a but-for cause of the negative reference.

A *false* negative job reference can be retaliatory—that is, can be caused by protected activity—and can constitute an adverse employment action. Whether the same can be said of a *truthful* negative job reference is less clear. There is no binding authority on this question, and nonbinding cases can be cited on each side. *Compare Mitchell v. Mercedes-Benz U.S. Intern., Inc.*, No. 7:13-cv-01708-SGC, 2015 WL 1310721, at *7 (N.D. Ala. March 24, 2015) (stating "a negative employment reference, even if providing only true information, can qualify as an adverse employment action because a true reference could serve to dissuade a reasonable employee from pursuing a protected activity just as much as a false

Case 5:16-cv-00020-RH-GRJ   Document 39   Filed 12/29/16   Page 5 of 9

Page 5 of 9

one") *with Mascone v. Am. Physical Soc'y, Inc.*, 404 F. App'x 762, 765 (4th Cir. 2010) (affirming summary judgment on a Title VII retaliation claim because the defendant's disclosure during a job reference of the performance deficiencies that led to the plaintiff's termination was truthful). And even aside from any conflict in the existing authorities, a good argument can be made on each side of the question.

First, the affirmative side. The prospect of obtaining a negative job reference, true or false, well might dissuade a reasonable worker from complaining of discrimination. Indeed, the prospect of a *truthful* negative reference that would not otherwise be given might provide a greater deterrent than the prospect of a *false* negative reference, because an employee might expect to have a greater chance to rebut a false negative reference. The assertion that a truthful negative reference can never be an "adverse employment action" does not square with the general definition of that term.

A hypothetical illustrates the point. Suppose an employer sexually harasses an employee for a time and later catches the employee stealing company property—has it on video, perhaps. Suppose the employer terminates the employee and decides to respond to inquiries from prospective new employers by giving only the employee's dates of employment. Suppose further that the employee files a sexual-harassment charge and that, angered, the employer abandons its nothing-

but-dates policy and begins telling prospective new employers the truth: that the employer caught the employee stealing.

If a *false* negative reference can be an adverse employment action caused by protected activity—a proposition that both sides seem to accept—it is hard to frame a defensible argument that this hypothetical *truthful* negative reference is not also a causally related adverse employment action. The motivation and effect on the employee are, by the terms of the hypothetical, precisely the same.

But there is also much to be said on the other side of the issue—much to be said in support of the assertion that a *truthful* negative reference is rarely or perhaps never actionable. An employer ordinarily should be free to respond candidly to a request for a job reference, without fear of being held liable or even just being sued for doing so. In the hypothetical set out above, a prospective new employer would like to know it is about to hire a thief. And an honest applicant for the same position would prefer not to lose out to a thief. Fair is fair.

Recognizing these interests, the common law affords an employer a qualified privilege when responding to a request for a reference. *See, e.g.*, Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 542 (2d ed. 2011); *Restatement (Second) of Torts* § 596 (1977); *Riggs v. Cain*, 406 So. 2d 1201 (Fla. 4th DCA 1981).

The Supreme Court has recognized that common-law principles sometimes inform federal civil-rights statutes. *See, e.g.*, *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) (noting that in applying Title VII, courts should "find guidance in the common law of agency"); *see also Rehberg v. Paulk*, 132 S. Ct. 1497, 1502-03 (2012) (noting many issues on which 42 U.S.C. § 1983 incorporates common-law principles). There is little reason to suppose that in adopting the antiretaliation provisions, Congress intended to curtail an employer's ability to give candid job references.

In any event, a court should properly hesitate before discouraging employers from providing truthful information about former employees. This is especially so in the school context. Suppose, for example, a school district fires a male teacher after finding him in sexually inappropriate circumstances with an elementary-school student. Suppose the teacher files a charge of gender discrimination, asserting the school district would not have acted so quickly against a female teacher. Must the district now provide a positive job reference for the male teacher? Must the district remain silent? One hopes not. In these circumstances, the district should be free to tell the truth to prospective employers, and the district's fate ought not be left in the hands of a judge or jury.

Nobody asserts, of course, that Mr. Knapp did anything like the teacher in this hypothetical. But there were reports that he came to school with alcohol on his breath, frequented bars, and smoked marijuana with students at parties. There were reports that raised concerns about Mr. Knapp's job performance: he sometimes slept in his office during the school day; he told his staff to tell all visitors he was busy; he rarely attended extracurricular activities; he failed to meet expectations in other respects. Mr. Knapp denies or disputes the significance of these events, but the record includes undisputed evidence that the superintendent received *reports* that these things occurred. It is not surprising that an official who was aware of these reports would provide a less-than-unequivocally-positive job reference.

The bottom line is this. Even if a truthful negative job reference can constitute an actionable retaliatory adverse employment action, Mr. Knapp has failed to provide evidence sufficient to withstand summary judgment on this claim. Mr. Norton gave a generally positive reference to Bay County, coupled with the negative suggestion that Mr. Knapp needed to get his life together. On the information and reports known to Mr. Norton, one could hardly expect a more favorable reference, with or without a charge of discrimination. Mr. Norton chose not to tell an Iowa district whether Mr. Knapp was eligible for rehire, but in these

circumstances one could hardly expect Mr. Norton to say, or perhaps even to know, whether Mr. Knapp was eligible for rehire.

In light of the interest in allowing truthful negative references, particularly in the school context, references like those shown by this record, under these circumstances, are not actionable. And there is also another basis for summary judgment on this claim. On this evidence, it cannot be said that Mr. Knapp's charge of discrimination was a but-for cause of these references.

### III

For these reasons,

IT IS ORDERED:

1. The defendant's summary-judgment motion, ECF No. 25, is granted in part (as set out in this order) and denied in part (as set out in the order of December 19, 2016).

2. The plaintiff's retaliation claim is dismissed on the merits.

3. I do *not* direct the entry of judgment under Federal Rule of Civil Procedure 54(b).

SO ORDERED on December 29, 2016.

                              s/Robert L. Hinkle
                              United States District Judge